# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE STRUCTURED ASSET MORTGAGE INVESTMENTS II TRUST 2006-AR6, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR6,

          Plaintiff,

vs.

STONE CANYON WEST HOMEOWNERS ASSOCIATION, *et al.*,

          Defendants.

Case No.: 2:16-cv-01904-GMN-CWH

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 75), filed by Plaintiff Bank of New York Mellon ("BNYM") and Cross Defendant Nationstar Mortgage, LLC ("Nationstar") (collectively "Plaintiffs"). Defendant SFR Investments Pool, LLC ("SFR") filed a Response, (ECF No. 80), and Plaintiffs filed a Reply, (ECF No. 81). Also pending before the Court is SFR's Motion for Summary Judgment, (ECF No. 76), to which Plaintiffs filed a Response, (ECF No. 79), and SFR filed a Reply, (ECF No. 82).

For the reasons discussed herein, Plaintiffs' Motion for Summary Judgment is **DENIED** and SFR's Motion for Summary Judgment is **GRANTED**.

## I. <u>BACKGROUND</u>

This case arises from the non-judicial foreclosure on real property located at 7972 Laurena Avenue, Las Vegas, Nevada 89147 (the "Property"). (*See* Deed of Trust, Ex. 1 to Pl.'s MSJ, ECF No. 75-1). In 2006, Juan A. Chacon ("Chacon") financed his purchase of the

Property by way of a loan in the amount of $188,000.00 secured by a deed of trust (the "DOT"). (*Id.*). BNYM became beneficiary under the DOT through an assignment recorded on March 16, 2012, (*see* Assignment, Ex. 2 to Pl.'s MSJ, ECF No. 75-2), and Nationstar is BNYM's loan servicer, (*see* Nationstar's Request for Foreclosure Notices, Ex. 10 to Pl.'s MSJ, ECF No. 75-10).

Upon Chacon's failure to pay all amounts due, Stone Canyon West Homeowners Association ("HOA"), through its agent Nevada Association Services, Inc. ("NAS"), recorded a notice of delinquent assessment lien in March 2010 and a subsequent notice of default and election to sell in June 2010. (*See* Notice of Delinquent Assessment, Ex. 4 to Pl.'s MSJ, ECF No. 75-4); (Notice of Default and Election to Sell, Ex. 5 to Pl.'s MSJ). During the time period that Chacon's account was in collections, Chacon made payments toward his delinquent account totaling $905.00. (*See* NAS Collections File at 4–6, Ex. 5 to Pl.'s MSJ, ECF No. 75-5).

On July 2, 2013, NAS recorded a notice of foreclosure sale stating a public auction would take place on July 28 of that year. (Notice of Sale, Ex. 7 to Pl.'s MSJ, ECF No. 75-7). At the sale, SFR purchased the Property for $13,000 and recorded a foreclosure deed on August 5, 2013. (Foreclosure Deed, Ex. 8 to Pl.'s MSJ, ECF No. 75-8).

Plaintiffs bring this quiet title action seeking a declaration that the DOT continues to encumber the Property and that SFR's interest in the Property is subject to this encumbrance. (*See* Compl. ¶¶ 26–73, ECF No. 1).[1] SFR asserts competing declaratory and injunctive relief counterclaims against Plaintiffs,[2] as well as crossclaims against Chacon for declaratory and injunctive relief. (*See* Answer 14:8–16:5, ECF No. 20).

---

[1] Plaintiffs' wrongful foreclosure and breach of NRS 116.1113 claims are no longer at issue in light of the parties' stipulation to dismiss these claims against HOA, (ECF Nos. 86, 87).

[2] The parties stipulated to dismissing SFR's slander of title claim against Plaintiffs, (ECF Nos. 70, 71), leaving only the declaratory and injunctive relief claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the

court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiffs move for summary judgment on their quiet title claim, asserting that Chacon's payments to NAS preserved their DOT by extinguishing the HOA superpriority lien before the sale. (Pl.'s MSJ 9:19–10:22, ECF No. 75). Plaintiffs further contend that the DOT survived because the foreclosure was conducted pursuant to a facially unconstitutional statute and, alternatively, the Property's inadequate sales price, in conjunction with other evidence of unfairness, warrants setting aside the sale on equitable grounds. (*Id.* 5:5–9:18, 10:23–15:20).

SFR seeks judgment in the form of a declaration that it is the title holder to the Property and that Plaintiffs' DOT was extinguished by the foreclosure sale. (SFR's MSJ 27:2–5, ECF No. 76). SFR asserts that Plaintiff's quiet title claim is barred by the applicable statute of limitations and, even if timely, cannot survive because Plaintiffs are without standing to bring the claim. (*Id.* 20:7–23:9); (*see also* SFR's Resp. 6:21–10:15, ECF No. 80).

The Court begins with the threshold issues of the timeliness of Plaintiffs' claim, the constitutionality of NRS Chapter 116, and Plaintiffs' standing to bring this action.

**A. Statute of Limitations**

According to SFR, Plaintiffs' quiet title claim is time-barred because the Complaint was filed outside of the applicable three-year limitations period prescribed by NRS 11.190(3)(a). (*Id.* 10:20–12:11). Plaintiffs respond, asserting that under NRS 11.080, a five-year limitations period governs the claim. (Pl.'s Resp. 6:3–17, ECF No. 79).

Courts in this District apply either the four-year limitations period under NRS 11.220, or else the five-year period set forth in NRS 11.070 and 11.080 to a lienholder's quiet title claim. *See, e.g.*, *Bank of Am., N.A. v. Azure Manor/Rancho de Paz Homeowners Ass'n*, No. 2:16-cv-00764-GMN-GWF, 2019 WL 636973, at *3 (D. Nev. Feb. 14, 2019); *Wilmington Tr., Nat'l Ass'n v. Royal Highlands St. & Landscape Maint. Corp.*, No. 2:18-cv-00245-JAD-PAL, 2018 WL 2741044, at *2 (D. Nev. June 6, 2018). *See also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (Nev. 2017); *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016).

Plaintiffs' Complaint was filed less than four years after the July 2013 foreclosure sale. (*See* Compl., ECF No. 1) (filed August 10, 2016); (*see also* Foreclosure Deed, Ex. 8 to Pl.'s MSJ, ECF No. 75-8). Therefore, the quiet title claim is timely under any potentially applicable limitations period, whether it be NRS 11.220, 11.070, or 11.080.

The Court rejects SFR's argument that NRS 11.190(3)(a) controls. That statute provides a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." *See* NRS 11.190(3)(a). Despite bringing the claim under 28 U.S.C. § 2201, NRS 30.040, and NRS 40.010, (*see* Compl. ¶ 46), Plaintiffs' plea to quiet title does not constitute liability created by statute. *See Torrealba v. Kesmetis*, 178 P.3d 716, 722 (Nev. 2008) ("The phrase 'liability created by statute' means a liability which would not exist but for the statute.") (quoting *Gonzalez v. Pac. Fruit Exp. Co.*, 99 F. Supp. 1012, 1015 (D. Nev. 1951)). Plaintiffs seek a declaration concerning the viability of its DOT by invoking the court's long-standing "inherent equitable powers" to settle title disputes. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1111 (Nev. 2016) (reaffirming that NRS 40.010 "essentially codified the court's existing equity jurisprudence") (citing *Clay v. Scheeline Banking & Tr. Co.*, 159 P. 1081, 1082 (Nev. 1916) ("[T]here is practically no difference in the nature of the action under our statute and as it exists independent of statute.")). Because actions to quiet title exist independent of statute under a court's inherent equitable jurisdiction, NRS 11.190(3)(a) does not apply.

**B. Constitutionality of NRS Chapter 116**

Next the Court turns to the parties' dispute as to whether the Ninth Circuit's decision in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to find that Plaintiffs' DOT survived the HOA foreclosure sale. (Pl.'s MSJ 5:5–8:11); (SFR's MSJ 12:19–15:26).

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice

to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority . . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). As this Court previously explained, the Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. *Christiana Tr. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00684-GMN-CWH, 2018 WL 6603643, at *3 (D. Nev. Dec. 17, 2018). Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly

irreconcilable" where the "relevant court of last resort . . . undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g, Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017).

In short, *Bourne Valley*'s holding that NRS Chapter 116 is facially unconstitutional is clearly irreconcilable with the Nevada Supreme Court's subsequent pronouncement. Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiffs, in the instant Motion, seek to prevail based upon *Bourne Valley*, the Court rejects this theory.

**C. Standing**

According to SFR, Plaintiffs lack standing because they have not produced "the original, wet-ink endorsed Note," or demonstrated the "chain of ownership of the Note and the DOT." (SFR's Resp. 6:21–10:15). Both arguments are without merit.

It is well established that a quiet title action may be advanced by "any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Plaintiffs seek a declaration as to the viability of their lien interest relative to SFR's interest. SFR appears to conflate Plaintiffs' declaratory relief action with one for enforcement of the note and DOT through *foreclosure*. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) ("[T]o foreclose, one must be able to enforce both the promissory note and the deed of trust.") (emphasis added). As to SFR's chain-of-title contention, SFR offers no competing evidence to rebut BNYM's production of the DOT, as well as the subsequent assignment by which BNYM gained all beneficial interest in the same. (*See* Deed of Trust, Ex. 1 to Pl.'s MSJ); (Assignment, Ex. 2 to Pl.'s MSJ).

Accordingly, the Court rejects SFR's argument that BNYM is without standing to bring the instant quiet title action.

### D. Tender of the Superpriority Portion of HOA's Lien

Plaintiffs argue that under the Nevada Supreme Court's decision in *Golden Hill*, a homeowner's payments may extinguish an HOA's superpriority lien and consequently preserve a lender's DOT. (Pl.'s MSJ 9:20–10:7). According to Plaintiffs, *Golden Hill* controls this case because Chacon's payments totaling $905.00 to HOA satisfied the superpriority lien. (*Id.* 10:14–22). SFR responds that homeowners cannot discharge an HOA's superpriority lien as a matter of law and regardless, the evidence Plaintiffs rely upon indicates that Chacon's payments fell short of HOA's superpriority lien amount. (SFR's Resp. 14:1–25:18).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* NRS 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016).

In *Golden Hill*, the Nevada Supreme Court held that a homeowner's tender of the full superpriority amount discharged an HOA's superpriority lien, invalidating the ensuing sale to the extent it extinguished the lender's deed of trust. *See Saticoy Bay LLC 2141 Golden Hill v. JPMorgan Chase Bank*, No. 71246, 408 P.3d 558, 2017 WL 6597154, at *1 (Nev. 2017) (unpublished). In that case, there was "undisputed evidence that the former homeowner made payments sufficient to satisfy the superpriority component of the HOA lien and that the HOA applied those payments to the superpriority component of the former homeowner's outstanding balance." *Id.*

In a subsequent unpublished decision, the Nevada Supreme Court declined to apply *Golden Hill* despite undisputed evidence showing the former homeowner's payments *exceeded* the HOA superpriority lien amount. *SFR Invs. Pool 1, LLC v. Wells Fargo Bank, N.A.*, No. 70471, 432 P.3d 172, 2018 WL 6609670, at *1 (Nev. 2018) (unpublished). The Court explained that "the record does not establish that the HOA in this case allocated or had an obligation to allocate the former homeowner's payment," toward the superpriority component of HOA's lien. *Id.* In a footnote, the Supreme Court noted that *Golden Hill* was "premised on" the assumption that a homeowner may cure the default as to HOA's superpriority lien, but "the issue was undeveloped in that it had not been timely and coherently briefed." *Id.* at *1 n.2.

In light of these two pronouncements, this Court has narrowly construed *Golden Hill* as requiring *both* "tender of the proper amount," as well as "evidence that the HOA, or its agent, was obligated to apply the payment to the superpriority portion of the HOA lien or that the HOA did in fact apply the payment in this manner." *See, e.g.*, *U.S. Bank Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:16-cv00576-GMN-NJK, 2019 WL 303004, at *6 (D. Nev. Jan. 22, 2019); *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-00692-GMN-CWH, 2018 WL 4704031, at *5 (D. Nev. Sept. 29, 2018).

Here, NAS and HOA's accounting ledgers for the Property show that after NAS recorded the delinquent assessment lien on March 19, 2010, Chacon made six payments to HOA totaling $905.00. (*See* NAS Collection File at 4–5, Ex. 5 to Pl.'s MSJ, ECF No. 75-5). HOA's monthly assessments were $59.50 during the 2009 calendar year, and $62.45 beginning in 2010. (*Id.* at 4, 8). Thus, at most, the common-assessments portion of the superpriority lien was $544.35.[3] As for maintenance or nuisance-abatement costs, the ledgers are without any

---

[3] At the time of service of the notice of delinquent assessment lien, Chacon was delinquent on six months' worth of assessments, meaning the common-assessments portion of the HOA superpriority lien was undisputedly less than $544.35. (*See* NAS Collection File at 5–6, 8); *see also Bank of Am.*, 427 P.3d at 117 ("[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of *unpaid* assessments.") (emphasis added). Therefore, Chacon's payments exceeded the superpriority amount

indication that such costs were incurred, (*id.* at 8), and SFR does not point to any evidence suggesting otherwise. Accordingly, the maximum amount of the HOA lien was $544.35, or nine months' worth of common assessments, and Chacon's installment payments amounting to $905 exceeded the HOA superpriority lien.[4]

Pursuant to *Golden Hill*, the Court next turns to whether HOA was either obligated to, or did in fact, apply Chacon's payment to its superpriority lien. While it is undisputed that Chacon's $905.00 payment accounted for more than nine-months' worth of common assessments, Plaintiffs have not demonstrated that these payments were applied to HOA's superpriority lien or that HOA was obligated to apply these payments in this manner. Despite Plaintiffs' insistence that "HOA applied [Chacon's] payments, extinguishing the superpriority piece of the lien," Plaintiffs do not cite to any factual evidence in the record to support this conclusion. (Pl.'s MSJ 10:21–22); (Pl.'s Reply 6:6–7). In place of admissible evidence, Plaintiffs solely cite to *Golden Hill* for this proposition. This is insufficient to shift the summary-judgment burden to SFR.

In summary, Plaintiffs have not established an essential fact to meet its prima facie case under *Golden Hill*. Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment insofar as it is premised upon Chacon extinguishing the HOA superpriority lien. The Court will now address Plaintiffs' remaining arguments in favor of its quiet title claim.

### E. Equitable Grounds for Setting Aside the Sale

Plaintiffs put forth the following arguments to establish the foreclosure sale should be equitably set aside: (1) the Property sold for a grossly inadequate price; (2) HOA's CC&Rs

---

even if Chacon's delinquency extended to nine months of assessments as SFR urges. (*See* SFR's Resp. 23:23–24:8, ECF No. 80) ("[A]t a minimum, the assessments piece would be $544.35[.]").

[4] The ledger also provides that collection costs and late fees were incurred. (NAS Collection File at 8). It is well established that an HOA's superpriority lien "does not include an additional amount for the collection fees and foreclosure costs that an HOA incurs preceding a foreclosure sale." *Horizons at Seven Hills v. Ikon Holdings*, 373 P.3d 66, 73 (Nev. 2016); *see also Bank of Am.*, 427 P.3d at 117.

provide that "the foreclosure sale will not extinguish the first deed of trust"; and (3) the CC&Rs, in conjunction with HOA's post-sale distribution of the sale's proceeds, suggest HOA intended a subpriority-only sale. (Pl.'s MSJ 12:2–15:20).

Courts possess the inherent power, based in equity, to settle quiet title disputes. *Shadow Wood HOA v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016). In determining whether an HOA's non-judicial foreclosure sale may be set aside on equitable grounds, the relevant inquiry is "whether the sale was affected by fraud, unfairness, or oppression." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017). The burden of establishing that a foreclosure sale should be set aside rests with the party challenging the sale. *Id.* at 646.

### 1. Grossly Inadequate Price

Plaintiffs argue that the Court should equitably set aside the sale based upon the Property's grossly inadequate sale price. (Pl.'s MSJ 14:12–15:3). According to Plaintiffs, SFR's purchase of the Property for $13,000 represented 10.4% of the Property's fair market value and, therefore, the sale price is inadequate as a matter of law. (*Id.* 14:27–15:3).

"[M]ere inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Shadow Canyon*, 405 P.3d at 648 (declining to adopt a bright-line rule to equitably set aside a sale "based solely on price."). Because a low sale price is insufficient as a matter of law, the Court turns to Plaintiffs' additional equitable arguments.

### 2. Mortgagee Protection Clause

Plaintiffs contend that HOA, through its CC&Rs, represented that its superpriority lien "would be subordinate to the deed of trust," and that "enforcement of its lien would not impair the rights of the beneficiary under the deed of trust." (Pl.'s MSJ 15:11–16). Plaintiffs continue

that while this clause, in and of itself, serves as evidence of unfairness, the mortgagee protection clause also suggests that HOA intended a subpriority-only sale. (*Id.* 12:3–14:5).

The Nevada Supreme Court has repeatedly held that an HOA's CC&Rs, including those that provide for mortgagee protection, do not supersede the statutory structure of NRS Chapter 116. *See SFR Invs. Pool 1*, 334 P.3d at 418–19 ("'Nothing in [NRS] 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien.'. . . The mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case.") (citation omitted); *Ikon Holdings*, 373 P.3d at 73–74 (holding that an HOA's CC&R provisions in contravention of NRS Chapter 116 "are superseded by statute and are thus negated."); *see also RLP-Vervain Court, LLC v. Wells Fargo*, No. 65255, 2014 WL 6889625, at *1 (Nev. Dec. 5, 2014) (unpublished) (declining to consider certified question of "whether an association may validly subordinate its assessment lien" in its CC&Rs because "there is controlling Nevada precedent" on point).

Additionally, other than the existence of the mortgagee protection clause itself, Plaintiffs have not pointed to evidence of resulting unfairness, such as chilled bidding. Even if Plaintiffs did adduce evidence that potential bidders had notice of HOA's CC&Rs, it is "presumed that any potential bidders also were aware of NRS 116.1104." *US Bank, N.A. v. SFR Invs. Pool 1, LLC*, No. 71414, 414 P.3d 809, 2018 WL 1448248, at *2 (Nev. 2018) (unpublished) (citing *Smith v. State*, 151 P. 512, 513 (Nev. 1915) ("Every one is presumed to know the law and this presumption is not even rebuttable.")). The Court accordingly rejects this argument.

### 3. The Purported "Subpriority-Only" Sale

Relatedly, Plaintiffs argue that HOA intended a subpriority-only sale based upon the mortgagee protection clause as well as the post-sale distribution of proceeds. (Pl.'s MSJ 12:2–14:2, ECF No. 75). Neither of these assertions, however, supports an inference that HOA did not intend to foreclose on its superiority lien. The foreclosure notices, as well as the

foreclosure deed, constitute prima facie evidence that HOA foreclosed on its superpriority lien. The notice of default and election to sell states that Chacon failed to pay monthly assessments due from October 1, 2009, denoting that the HOA lien was comprised of nine months' worth of common assessments. (*See* Notice of Default, Ex. 6 to Pl.'s MSJ, ECF No. 75-6). The notice of foreclosure sale specifies that the winning bidder will acquire "all right, title, and interest," to the Property, and SFR's foreclosure deed provides that HOA, in fact, conveyed "right, title and interest" in the Property "without warranty express or implied." (*See* Notice of Sale, Ex. 7 to Pl.'s MSJ, ECF No. 75-7); (Foreclosure Deed, Ex. 8 to Pl.'s MSJ, ECF No. 75-8). These representations demonstrate that HOA did not elect to conduct a subpriority-only sale. *See Bank of New York Mellon v. K&P Homes, LLC*, No. 71273, 404 P.3d 403, 2017 WL 4790995, at *1 (Nev. 2017) (unpublished) (holding that the foreclosures notice's reference to unpaid common assessments coupled with a foreclosure deed language stating that HOA conveys "all its right, title and interest" constitutes prima facie evidence that HOA foreclosed on the superpriority portion of its lien.); *PNC Bank, Nat'l Ass'n v. Saticoy Bay LLC Series 9320 Mt. Cash Ave. UT 103*, No. 69595, 395 P.3d 511, 2017 WL 2334492, at *2 (Nev. 2017) (unpublished) ("[W]e conclude that the language in the pre-sale notices constituted prima facie evidence that the HOA was foreclosing on a lien comprised of monthly assessments.").

In light of these representations, the alleged improper distribution of post-sale proceeds is not enough to support a finding that HOA only foreclosed on the subpriority-portion of its lien. First, an HOA's "post-sale distribution of proceeds ha[s] no bearing on the events leading up to and during the sale." *Bank of Am., N.A. v. Saticoy Bay LLC Series 716 Fiesta Del Rey*, No. 73623, 433 P.3d 262, 2019 WL 292773, at *2 (Nev. 2019) (unpublished). More significantly, NRS 116.31166(2) absolves SFR of "any responsibility to see that the sale proceeds are properly distributed." *Shadow Canyon*, 405 P.3d at 650 (recognizing that under NRS 116.31166(2), a lender's "recourse, if any, is against the HOA or its agent that conducted

the sale and distributed the proceeds"); *see also* NRS 116.31166(2) ("The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.").

To recap, Plaintiffs have not met their burden of demonstrating factual disputes as to whether Chacon's payments were credited to HOA's superpriority lien or that the foreclosure sale was sufficiently tainted with fraud, oppression, or unfairness to warrant setting aside the sale on equitable grounds. Therefore, the Court denies Plaintiffs' Motion for Summary Judgment on its quiet title and declaratory relief claims.

### F. SFR's Motion for Summary Judgment

Given the lack of any genuine factual dispute as to Plaintiffs' theories supporting its quiet title claim, summary judgment in SFR's favor is warranted against Plaintiffs and Chacon. *See SFR Invs. Pool 1*, 334 P.3d at 419 ("NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust."). Finding no legal or equitable basis to invalidate the sale, SFR's purchase of the Property extinguished the DOT and any remaining interest Plaintiffs or Chacon possessed with respect to the Property. *See* NRS 116.3116(2); (*see also* Statutory Foreclosure Notices, ECF Nos. 75-4, 75-5, 75-7); (Foreclosure Deed, ECF No. 75-8). SFR's Motion for Summary Judgment on its declaratory relief claim against Plaintiffs is granted. With respect to Chacon, SFR's request for declaratory relief is likewise granted to the extent Chacon asserts any adverse interest in the Property.[5]

///
///
///
///

---

[5] As Chacon has not appeared in this action, SFR has moved for clerk's entry of default, (ECF No. 68), which the clerk of court subsequently entered on January 26, 2018, (ECF No. 69).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 75), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 76), is **GRANTED**.

The Clerk of Court is instructed to close the case and enter judgment accordingly.

**DATED** this __19__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge